Okay, the first case on calendar is ABS Global. Mr. Horwitz, are you ready to proceed? You may. Thank you, Your Honor. You may please the court. Surely. The leery reference at the center of this appeal is an article from a scientific journal. It is exactly what this court said in Durham Ed could be treated as a printed publication, as a matter of law, and without the need for a bench trial on the question of public acceptance. Let me ask you a question. I didn't see I in the record, but I'm curious. Was that paper cited in anything else that was published prior to 28 March of 2003? This specific paper, in this record, we don't have a citation to this paper. We have other citations that you saw in our briefs to other papers from this journal, but not to the leery reference itself. So you didn't find anything? What I can say is that it's not in the record. Okay. Isn't that your problem here? I mean, this to me seems like it should have been considered prior art based upon the relevant, you know, context and circumstances, but the board made a contrary factual conclusion, and it's a substantial evidence standard. How can we overturn that? Well, I think the reason is that the board's factual conclusion was based on a pair of independent legal errors, either one of which would compel Vicodur in this case, and in fact it's undisputed that these errors, if committed, would be legal errors compelling Vicodur. The only question is whether they happen. So let me go over them. The first is the board assessed the evidence and factors supporting public accessibility in isolation from one another. Sure, but that's, I mean, how else are they going to assess the different pieces of evidence except to go through them and discuss, you know, whether they're good or not. They may not have made the ultimate conclusion that, you know, even put together, they're not good enough, but they looked at all of the evidence. Well, there's two points I'd make on that specific error, and of course there's a second I'll get to in a moment. The first is that the board identified four categories of evidence, so if that had exhausted the field, the point that they didn't consider all of them, you might, the argument that they didn't make the final statement might be a stronger argument. But the four categories of evidence themselves do not exhaust the field, and particularly the board did not consider the big picture question, which is what kind of article is this? What kind of publication is this? This is a printed publication, that is to say, this is an article in a scientific journal. Each of the four factors. But they were clearly aware of that. They looked at all of that. They knew that this was, you know, whatever evidence was on the record, and they decided that put together, it wasn't enough. I think they're wrong, but it's a substantial evidence standard. Right, and they certainly did say that. They also said, though, with regard to each one of them, for example, on page 16 of the board's opinion, it says, the date stamp, you can't rely simply on the date stamp. You need more than that. Or the copyright, without more, copyright registration without more is not sufficient evidence. But they didn't put it all together. In particular, in the context Excuse me for a second. You've referred to the Leary article as being part of a scientific journal a couple times. And so are you saying that these proceedings are something that every member of the society receives, and it's something that's published on a monthly or quarterly basis? The record reflects that it is a regularly published set of proceedings with a continuous set of volume numbers one after another. Right. It's not a, there's no evidence that it's like a journal, like a monthly journal or a quarterly journal, like how I typically think of a scientific technical journal that's published by society. In terms of what the record has, in terms of the regularity, we have two things that I would point to. One is the receipt, three. One is the receipt by a serials department, which is to say that that's where it would have been shelved, so it's consistent with the journal. The second is the fact that it has an ISSN number, which is to say not merely an international standard book number, BN, but an international standard serial number. We know that the society, this engineering society, received a block of ISSN numbers and ISBN numbers and assigned an individual unique ISBN number and ISSN number to this particular publication, this particular proceeding. What we don't know right now is what did they do with it? Is this something that they push out, they make 10,000 copies of this publication and then push it out to every single member of the society, assuming there's 10,000? Or is it something that they keep and then anybody that somehow learns about that particular technical conference, which this publication compiles all the articles that were presented, can call up the society and then get access to it that way, if they know about the technical conference? So a few things. First, you certainly don't need 10,000 copies. In the Hall case, you had a single thesis in the Freiburg University in Germany. We're trying to figure out what indicia do we have, what they do with it after they give it a number and after they assign a copyright date to it. So the indicia we have in terms of how far it goes include, number one, the copy that we have in the record is from Carbondale, Illinois. The conference was in San Jose, California. So we know that at least one copy traveled halfway across the country. Additionally, we have at page 3381 of the joint appendix a statement on the copyright page that interested researchers are free to copy the article, if they wish, so long as they send a $15 check to a copyright clearinghouse. So I can't tell you that there are 10,000 copies out there. I can tell you that at least one traveled across the country and that anyone who took it out from the library was free to make a copy. But I'd like also to get to the second independent legal error that, even if you were not persuaded that the board failed to consider the evidence in the aggregate, this second error would necessarily compel Baker to be independent of that, which is the board imposed upon ABS the obligation to establish public accessibility as of a particular date. It's clear as day, if you look from page 15 to 16 of its opinion, it says ABS has failed to meet its burden to establish accessibility as of a particular date. Because the evidence and argument presented to it on that score was just too meager and underdeveloped for it to have any confidence that it actually got pushed out and was made publicly accessible by any given certain date. So I think that if that one statement was read in isolation, it would be possible, perhaps, to read the board's opinion in that way. But the board then repeated this particular date requirement and expressly articulated it as a burden to establish a particular date five additional times thereafter. But you do have a burden to establish that it was prior art. So you have a burden to establish a date range. And all they were responding to, at least in the pages you cited, were the notion that the date stamp was sufficient. And so they're saying you have to show more than just a date stamp, because that doesn't necessarily correlate with the public accessibility date. I don't read their decision as saying in order to establish a printed publication, you have to show the exact date it became publicly accessible. You have to show a date before the priority date when it was publicly accessible. That can be a range of dates. That can be likely anything. It's going to key on certain dates, generally. But how do you read what they're saying? You just haven't shown any date good enough to establish that it was actually prior art. So they didn't say any date good enough. The pages I cited at 15 to 16, that was in the context of the date stamp. But then they repeated on page 18 in connection with the copyright. And then on 20, 22, 23, and 25, and they don't just use particular date, although I think that that's quite telling. It's the same issue with the copyright, though. The copyright doesn't necessarily correlate to public accessibility. And so they're faulting you for not showing public accessibility by pointing to a date that doesn't prove that. It doesn't prove public. If they had stopped at public accessibility issues, I would agree. But what they said was accessibility as of a particular date. Again, that's on 16. It's on 18 with the copyright. Again, 20, 22, 23, 25. Again, I'm looking at 22. The problem with your argument is it's the same thing that they're responding to. You put forward all these different dates connected to events, and they said none of these events are sufficient for us to find that it was publicly accessible because you could draw the equal inference that mere copyright or mere deposit in a university library doesn't show public accessibility. Again, I think that the statement particular date is quite clear. But if that one isn't, they also say, and I forget exactly which of those pages that I just mentioned, they also use the formulation date certain. It might be 20. It might be 22. But the point is that now if you thought the opinion is unclear and could be read either way, the point still would be the same. The result would be the same, which is that this court has repeatedly held that when a board decision can be read in multiple ways, one of which would be based on an impermissible basis, based on legal error, the correct course is simply to vacate and remand to allow the board to more clearly articulate its reasons and more clearly apply the correct legal standard. Let me ask you this. When the paper was presented, the inside cover of the proceedings journal says, papers were selected by the conference program committee to be presented in oral or poster format. Was the paper presented in poster format? The record doesn't reflect which one it is. And we are not relying on a poster in the way that Klopfenstein relied on slides to suggest that the date was January of 2002. Our argument is that that indication in the inside cover reflects the practices of the organization, particularly the timely dissemination point. And it's clear that the purpose, and this is something that the court has emphasized in multiple cases, that when the purpose of a particular reference is for the public dissemination to interested and skilled members of the art, then it's more likely to be a printed publication. So let me ask you this. I assume in your petition, you pointed to this, the board accepted this as prior art for purposes of institution. In the reply, or in the patent owner response, they disputed this. Why didn't you come back with additional evidence in forms of an affidavit or something, either from somebody at the library or somebody at the society or something that said, you know, this is publicly available in the ordinary course of business? In terms of affidavits, what we had in the petition, supporting the petition, was the affidavit or declaration of our expert, who's a member of the society and offered the opinion that it was publicly available as of June of 2002. That point wasn't disputed by their expert, also a member of the society, but it's just not in the record. But they did dispute that it was publicly available. And in light of this, of course, cases, and in light of the nature of the reference that we had, we thought the record was sufficient. And I'd just like to close by pointing out that this one- So, do you want us to accept the inference that Leary, through some electronic index of their publications on the web, or do you want us to accept some inference that every member of the society just gets copies of these publications, and so therefore it was distributed to every single member? Or do you want us to accept the inference that something else happened that introduced this publication into the storehouse of public knowledge? What is the specific inference you want us to accept, other than just saying it was timely disseminated? That's too conclusory. What's the specific act the society did that you want us to believe is inferred from this record? I don't think that we're asking the court to make any of those specific inferences. I think that we're asking the court to follow the guidance in the Durham Med footnote, indicating that when you have a scientific journal article and all of the evidence points in the same direction, in the absence of contrary evidence consistent with the Stamps.com case, you should conclude that it's a printed publication. And I'll close with one point, which is that- It's not just suddenly magically publicly accessible because it's a scientific journal. I would have thought your answer would have been, we offer proof that it was deposited in a university library where it was cataloged and made available. That would be the inference you'd like us to draw. I don't think cataloging is necessary. I certainly think the evidence would support a conclusion that it is in a university library, again, halfway across the country from the conference, and that it is the sort of article that would be treated- You're well into your rebuttal time. I understand. I'd just like to make one point, which is that if there had been a single case in which this court had ever treated a scientific journal article as something other than a printed publication, Ingram would have cited it. No such case exists. Thank you. Mr. King? Good morning. May it please the Court. Julius Chen on behalf of the appellee, Ingram, LLC. I'd like to start with Judge Hughes's point about the substantial evidence standard, because I think that's really the key here. And I think it's because this case is not- Let me flip that for you. Sure. If the Board had drawn the opposite conclusion based upon the same set of facts, would that be supported by substantial evidence as well? We still don't think that would get all the way to- And why not? I think for all the reasons that Judge Chen was pointing out about all of the inferences that need to be drawn- Are you saying the Board can't look at a set of facts and draw the ultimate inference that it was publicly accessible, that it needs direct evidence in the form of documents or testimony or the like? Well, Judge Hughes, I think the Board is free to draw inferences, but those inferences- I don't think it necessarily requires direct evidence. But the point here, I would say, is that- Again, let me ask you. Given that this is an apparently respected society that both of the experts in this case belong to, that they both published articles in this, that the conference well preceded a priority date, the publication well precedes a priority date, there's evidence that it was deposited at a university library, and the like, it was catalogued, then why couldn't the Board draw an inference that it was publicly accessible based upon those facts? Well, I still think that there are inferences that are not supported by the record. And that's the key to me. You started by saying- No, no, no, don't talk. Let me ask you this along those lines. And that is, what about the negative pregnant? That is, you have two experts, as Judge Hughes said, both of whom are members of the society, both of whom provided affidavits, and neither of whom, including yours, said, I did not receive this. Isn't there an implication? No, Your Honor. Don't you interrupt me. I'm sorry. I thought your question was done. I'm sorry. Isn't there an implication that at least your expert, who's a member of the society, would have said, I didn't get it in the mail? Well, Your Honor, I think that would flip the burden. And I think we would look first to their expert, which did address public accessibility in his affidavit. And all he said was, this was received by a library. That's derivative of the date stamp. If you wanted to rely on expert evidence, the way that ABS should have proven this case was to have its expert actually say, I was a member of SPEE at this point in time. Our expert was not in 2002. But have their expert, who was a member of SPEE since 1998, actually say, I received this, or I know that SPEE is well-known and reputable. Those are the types of things that are missing in this case. And I think this case is similar to the Lister case, in which it is certainly possible that the story that was told, based on the evidence, somebody could have made an inference about public accessibility. But the court said that that would be pure speculation and that we need more of a record basis. And so here, I think there are just too many inferences to be made. We don't know what the publishing practices are. We don't know what the membership is.  I have with your argument, and I think perhaps the board's analysis, articles are relied on all the time as prior art for doing any kind of patentability or validity analysis. There's 8,000 patent examiners. Not only do they rely on publishing US patents or foreign patents, but they rely on all kinds of non-patent literature. And if we take your position to the logical extreme, every single time an examiner wants to rely on non-patent literature, it's going to have to do some kind of extra-level fact-finding to develop a declaration from the publishing house of that particular article to guarantee that not only was it published on a given date, but it was actually somehow publicly disseminated by that date. And that just feels like a lot of make-work, and it doesn't really make any common sense. So what's your response to that? Sure. I would point to two things. The first is that we're not asking the board to abandon common sense, or we're not trying to restrict its ability to make inferences here. And I would point to the Erickson versus Ivey PTAB decision. What's the answer? Don't talk about cases right now. Just talk to me about what makes sense. One, I think that, depending on the record, it is possible that, for example, in the Durham case, just since they brought that up, we don't know exactly why, because the court didn't explain it was a dicta footnote. But what we know was that that scientific journal, quote, unquote, was a December 1995 issue. So I think there, you might be able to draw the inference that, look, it says December 1995. It looks like a monthly periodical. It's regularly distributed. Here, we don't have that. This is a conference. We don't know if they distribute after every conference or how often they do. We don't know what their publishing practices are. This is not a regular publication in the sense of a monthly periodical. The other thing I would say is that… So are you saying that if a patent examiner were to find an article in a particular volume of Scientific American, that they could just take official notice that that was, in fact, not only printed on the date that's on the cover, but it was actually publicly accessible as of the date that's printed on the cover? Well, I think it would, again, sort of depend on… What would it depend on? So it would depend on sort of this common sense point. And I think your official notice point is right because if it were Scientific American, I do think that the board is free to draw inferences based on official notice. So, for example, in the Erickson versus Ivey case that I was referencing below, that was a reference that was published in the IEEE. That's the standard setting organization. And the board simply said, look, we know IEEE is a standard setting organization. We know its membership is large. We know that it is well known and reputable. So we're going to take official notice of that fact. Now, we point out here that they didn't do this. Do you take any, I don't know, contradictory view on what the board did in that Erickson case? No, Your Honor. What if the board has done that here? Taken judicial notice of the fact that this society, this engineering organization known as SPEE, has been around for a very, very long time. It has a very large international membership, and it's been publishing all kinds of things, journals as well as these publications, compiling articles presented at technical conferences for decades and decades and decades. Would that have been a problem for the board to take judicial notice? No, Your Honor. Oh, just patent judge notice? No, Your Honor. And we think that's fine. And we think that gets to the process point, to be honest. Because here, the board simply— Isn't that the problem, that the board refused to look at the entire context and draw reasonable inferences from this case? And what they seem to have done, and what they seem to have been doing in other of these patent publication cases, is imposing a much more strict standard of requiring some type of direct evidence, either through affidavits or actual evidence of public accessibility, rather than just allowing a factual view of the context. Well, Your Honor, my response to that is actually to go back to the process point. And so here, I would point the board to Appendix 699, where this— Do you agree that if they had imposed some type of direct evidence requirement, that they have to have affirmative evidence of actual public accessibility and can't rely on inferences, that that would be legally incorrect? Yes, Your Honor. But there would still need to be a record basis for each inference, and we think that is the critical link here. And if I could just go back to Lister quickly. There, it says we need at least some evidence of general practice that tells us—and we're fine with that. That's the type of inferential thing that I think you could get to. Or you could have official notice. There are other ways to get there through inference, but you need to have some sort of record basis. And just to go back to the process point and the sort of holistic inquiry, I think it's very telling here what happened. ABS at Appendix 581 said these are the categories of evidence we're going to rely on. And in this particular case, the board asked repeatedly—this is from 697 to 700. It asked several times, you've given us publication information. What else do you have to link publication to public accessibility? And they rely only on, and specifically, the ISBN, the copyright date, the date stamp, and the SPIE website printout with the publication date. So the board asks again, and I'm quoting now at Appendix 69— Well, that doesn't seem to be helping your case. That seems to be hurting your case. It seems like they're asking over and over again for direct evidence of public accessibility, which is the problem. If that's the standard they're imposing, they're legally incorrect. Well, Your Honor, this goes further. And so what I would say with respect to the holistic inquiry is that they say, well, you know, this is quoting ABS. I think when we look at this in the aggregate, all these facts support each other. And the only facts that they actually give to the board when it's asking, tell us how we get from publication to public accessibility, it points to only those parts of the record. And so all I would say is that when the board is— The point I think you're trying to make is that the petitioner didn't present any evidence of either regular practice from the Southern Illinois University Library of how long it ordinarily takes them upon receipt of a book to get it up on the shelf and index and catalog it so it can be publicly accessible to anybody that visits the library, nor did they present any kind of general practice information from the society itself, that once it publishes one of these publications of the technical conference, that it does something extra with it in terms of trying to get it out to the public. Does it distribute any? How many does it distribute it? Who does it distribute it to? And so on and so on. Because there isn't that kind of general information knowledge of the practice of accessibility, there's a problem here. That's correct, Your Honor. And because of that, we can't make an inference of, well, was it out by June 2002, or May 31, 2002, or July 4, 2002. That's correct, Your Honor. Both those questions were specifically asked at the hearing. 699, 700. Do you have the indexing? Do you have the publication general practice evidence? And they said no both times. And so in the end, what the board did, and I think it's very clear from the final written decision, is it first recounts very carefully and specifically at appendix 13 to 14 that ABS has confirmed that there was no such evidence in this record. It then goes through the pieces of evidence that ABS proffered and says, you know, we don't know what to draw, for example, from the ISBN and ISSN numbers. We have neither argument nor evidence to explain the significance of those items to us. And it ultimately concludes that — Mr. Chen, would common sense allow us to take some sort of notice that all of these scientific organizations exist in some sort of guild atmosphere where part of their purpose is to set a standard for their members' publications, their members' submissions, and then push them out into the community? And that that's a large part of their purpose. Well, Your Honor, two responses. One, I don't think it would be this court's role to make that judicial notice. I think that would be the board's role to make in the first instance and for this court to review. The second thing I would say is that I think that would be a very sweeping statement. There are different types of organizations out there, right? There's — This happens to be an organization that both the party's experts belong to and published in that journal, though. This is not an unrelated professional organization. That's correct, Your Honor. But we are looking at a specific timeframe of 2002. Our expert was not a member at that time, I believe. And we don't know if, you know, that was the nascent period of this organization. We should have some basis to be able to draw a conclusion to say that this was, in fact, a well-known and reputable scientific organization that was succeeding in all of the things that it wanted to do in terms of timely disseminating. You seem to make some sort of a — here's the argument in the red brief. Did you preserve that below at all? So, yes, Your Honor. We preserved it. Did you move to exclude it? We did not move to exclude. And so I want to be very clear here. We are not saying — and the board did not ultimately exclude. What we argued was that it went to the weight of the evidence. And we're free to make that argument in our substantive patent owner reply — sorry, response without moving to exclude. And the board has clear precedent on this, that if you are going to argue about weight, then you can do it in your patent owner response or in your substantive brief. If you're going to move to exclude altogether, then you can do it in a motion to exclude. And so here, I just don't think it matters because there was ultimately no exclusion by the final written decision. And so all you have is the board saying very clearly, at the very least, we believe it's hearsay, but we just don't know what to draw from it. And so we don't think the hearsay point really, you know, sort of shakes out. Is that a pivot from your red brief? What's that? Nothing. Go ahead. Keep going. I'm sorry. Those are all the points I had. If the court has no further questions, I'm happy to — Thank you, counsel. Thank you. You've got about a minute and a half. Yes, thank you, Your Honor. It is, in fact, Judge Chen, a pivot from the red brief. If you look at page 22, it's clear that they argued that this was inadmissible. In terms of the dates, Judge Chen, you mentioned July, May, June. It could even have been August or September. Any date in 2002 would be sufficient to get behind the March 2003 priority date. And that's why the board's apparent reliance on a particular date requirement is so significant here. Now, I'd like to emphasize that not only did both experts publish in this journal, their experts' CV, 20 percent of his publications, are in this journal. So there's no doubt that this is the kind of journal that at least these experts think — Going back to when? What? Going back to when? 2004 is his earliest. This is 2002. But we have something before that in the record. So the article that we cite at page 31 of the — Just to be fair to the patent board, everything that's coming out of your mouth right now was never actually presented to the board, either in a patent owner response or by your attorneys at oral argument in front of the board. Is that fair to say? It's fair to say that the specifics regarding the CV and the publications, those were not specifically mentioned. The broader point about SPIE being a well-known and reputable organization was presented both in 581 of the appendix. Right. There was a sentence that was drafted by the attorney for the client. It wasn't something that was supported by anything, by pointing to something in the record to establish that as a fact. Is that fair to say? The record we have is just Professor Robinson's declaration that this was publicly available, not the additional point. Right. So the statement in the patent owner response that this is a well-known, reputable organization, that's just the attorney talking right there in that sentence. Is that fair to say? That's fair to say. If it had been disputed, we would have presented it differently. Time's up. Thank you, Your Honor. Thank you.